Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2785 | **DATE** | 4/21/2004 |
| **CASE TITLE** | Mountain Funding, Inc. vs. Frontier Insurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 22 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 4/21/2004 | |
| ✓ | Copy to judge/magistrate judge. | | date mailed notice | |
| DK | courtroom deputy's initials | | DK mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOUNTAIN FUNDING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 2785 |
| | ) | |
| v. | ) | |
| | ) | |
| FRONTIER INSURANCE CO., | ) | Magistrate Judge Morton Denlow |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

The parties have completed discovery, filed their final pretrial order, and are preparing for trial. This matter comes before the Court on motions *in limine* filed by the parties in preparation for trial. These motions were referred by District Judge Ronald A. Guzman for resolution. This Court held oral arguments on the motions on April 12, 2004 and announced the rulings from the bench. This memorandum opinion provides additional explanations for the Court's rulings.

### I. BACKGROUND FACTS

On or about September 30, 1997, Mountain Funding, Inc. ("Plaintiff") provided $3.8 million in subordinated financing to United Round Lake Land Development, LLC ("United Round Lake") for the development of single and multi-family homes in Lake County, Illinois. This loan between United Round Lake and Plaintiff (the "1997 United Round Lake Loan") was secured by a first mortgage lien on the property. United Round Lake purchased the land upon which the homes were to be developed and was to sell the individual lots to

DOCKETED
APR 2 2 2004

United Homes, Inc. ("United Homes"), the actual homebuilder, pursuant to a lot purchase agreement (the "1997 Lot Purchase Agreement"). Plaintiff agreed to subordinate its loan to Cole Taylor Bank, the site improvement lender.

In February 1999, United Round Lake was in default of its obligation to Plaintiff. In lieu of foreclosing on the 1997 United Round Lake Loan, Plaintiff agreed to a restructuring of the loan agreement. In order to facilitate the restructuring, on February 9, 1999, a new lot purchase agreement (the "1999 Lot Purchase Agreement") was entered into between United Homes and United Round Lake whereby United Homes agreed to purchase the lots specified therein on a certain timetable and at a certain price.

Additionally, as part of the restructuring, United Homes was required to procure a land acquisition bond. United Homes procured the land acquisition bond (the "Bond") on May 4, 1999 through Frontier Insurance Company ("Defendant" or "Frontier"). Defendant was the surety for the Bond, United Homes was the principal for the Bond, and United Round Lake was the obligee. Later, Plaintiff was added as an additional obligee because it was the funding source and the Bond was intended to protect it in the event United Homes defaulted under its obligations. The Bond indicated that in the event United Homes failed to perform its obligations under the 1999 Lot Purchase Agreement, Defendant "guarantees performance by United Homes, Inc. pursuant to the Agreement until such time as all lots have been purchased, however, the Surety's liability under this bond shall in no event exceed $5,000,000."

Under the 1999 Lot Purchase Agreement, expected payments by United Homes to United Round Lake would have been sufficient to pay off Plaintiff and the senior lender, Cole Taylor Bank. However, in September 1999, United Homes defaulted under the 1999 Lot Purchase Agreement. In September 1999, February 2000, March 2000, and July 2000, Mountain Funding notified Frontier of the default and made its claim under the Bond. Frontier has never paid Plaintiff any money under the Bond. On March 9, 2000, United Homes filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

In July 2000, Plaintiff informed Defendant that it was attempting to mitigate its losses by allowing United Round Lake to negotiate agreements with other purchasers. In September, August, and December of 2000, United Round Lake was able to sell the remaining 454 bonded lots under the 1999 Lot Purchase Agreement to other parties in three separate transactions for a total of $13,648,510.00.

Plaintiff is seeking $5,708,333.32 under the Bond plus interest pursuant to the failure of United Homes or Defendant to purchase the bonded lots under the 1999 Lot Purchase Agreement. Alternatively, Plaintiff is seeking $2,242,920.61 – the difference between the amount owed by United Homes under the bonded 1999 Lot Purchase Agreement and the actual amount received from third parties for the 414 bonded lots not sold to United Homes.

## II. LEGAL STANDARD

A district court's authority to rule on motions *in limine* is pursuant to its inherent authority to manage trials, even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Townsend v. Benya*, 287 F. Supp. 2d 868, 871 (N.D. Ill. 2003).

District judges have broad discretion in ruling on motions *in limine*. *Id.* However, in order to exclude evidence on a motion *in limine*, the evidence must be inadmissible on all potential grounds. *Id.* Otherwise, rulings should be deferred to the time of trial to make possible the resolution of questions of relevancy, foundation, and potential prejudice. *Id.* A ruling on a motion *in limine* is not necessarily final. Trial judges are free to alter previous *in limine* rulings, within the bounds of sound judicial discretion. *Id.*

## III. DISCUSSION

Plaintiff has filed four motions *in limine*. Defendant has filed one motion *in limine*. For the following reasons, the Court grants in part and denies in part Plaintiff's motion number 1; denies Plaintiff's motion number 2 subject to the disclosures by Defendant as described below; grants Plaintiff's motions numbered 3 and 4; and denies Defendant's motion.

### A.  PLAINTIFF'S MOTIONS *IN LIMINE*

#### 1. Defendant's financial condition and its rehabilitation

On August 25, 2001, the Superintendent of Insurance of the State of New York filed rehabilitation proceedings against Defendant in the Supreme Court of the State of New York. Under New York law, the Superintendent may apply for an order to rehabilitate an insurer who, for example, is insolvent or who is in such condition that its further transaction of business would be hazardous to its policyholders, its creditors, or the public. N. Y. Ins. § 7402 (McKinney 2000). Plaintiff contends that evidence regarding Defendant's financial

condition or the fact that it is in rehabilitation is irrelevant to the issue of liability or damages and thus should be barred pursuant to Federal Rule of Evidence 402. Alternatively, Plaintiff argues that evidence of Defendant's financial status is unfairly prejudicial because it appeals to the sympathy of the jury and should be barred pursuant to Federal Rule of Evidence 403.

In response, Defendant does not argue that references to its financial trouble generally must be admitted. Moreover, Defendant conceded during oral argument that its rehabilitation status is irrelevant to the issues of liability and damages. Nonetheless, Defendant maintains that references to its rehabilitation are relevant and necessary in order to inform the jury of the identity of the defendant in this case. According to Defendant, to do otherwise would be to present a defendant that does not exist and to hold a fictitious entity liable. Defendant maintains that the actual party in interest became "Gregory V. Serio as Rehabilitator of Frontier Insurance Company in Rehabilitation" upon Defendant's placement in rehabilitation. In the alternative, Defendant suggests that the Court allow it to reference the rehabilitation, and then give a jury instruction either explaining what a rehabilitation is or directing the jury that it can not consider the rehabilitation in its deliberations.

During oral argument, Plaintiff stated that its interest in avoiding unfair prejudice by the jury could be addressed by giving a limiting instruction informing the jury that Defendant's rehabilitation should not be considered in rendering a verdict. The alternative suggestion by Defendant will be adopted regarding references to Defendant's rehabilitation subject to the parties offering limiting instructions that instruct the jury not to consider

5

Defendant's rehabilitation during its deliberations. However, references to Defendant's financial status generally will not be permitted because it is irrelevant and unfairly prejudicial under Federal Rules of Evidence 402 and 403. Therefore, Plaintiff's motion *in limine* to bar references to Defendant's financial status and rehabilitation is granted in part and denied in part. The parties are to prepare agreed jury instructions to explain that the Defendant's rehabilitation is not to be considered on the issue of liability or damages.

### 2. Expert testimony

Plaintiff argues that Defendant should be barred from presenting any and all expert testimony under Federal Rules of Evidence 702, 703, and 705 because Defendant has not disclosed the identity of any intended expert witness or the experts' reports as required under Federal Rule of Civil Procedure 26(a)(2). Specifically, Plaintiff argues that Defendant should be barred from presenting (1) testimony concerning the underwriting process, (2) testimony concerning the various factors affecting underwriting risks, and (3) testimony that, had Defendant been in possession of certain additional information, Defendant could have made different decisions regarding the issuance of the Bond. Plaintiff maintains that this testimony should be barred because such information is beyond the common knowledge of a lay witness and can only be presented by someone possessing the knowledge, skill, and experience of a bond underwriter.

Defendant does not dispute that there were no disclosures of expert witnesses during discovery under Federal Rule of Civil Procedure 26(a)(2). Rather, Defendant argues that the

anticipated testimony is fact-based occurrence witness testimony. According to Defendant, David Campbell and James Moore, individuals who participated in the decision to issue the Bond, will testify regarding the actual processes, criteria, and standards they employed in issuing the Bond, as well as the actual information they received from United Homes. In addition, Defendant intends to elicit testimony from David Campbell that had he known of the alleged collaboration between United Homes, United Round Lake, and Plaintiff, Defendant would not have issued the Bond.

Under Federal Rule of Civil Procedure 37(c), if the Defendant was not substantially justified in failing to disclose expert witnesses required by Rule 26(a), and the failure to disclose was not harmless, the Court may impose sanctions. *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Beneficiencia de Puerto Rico*, 248 F.3d 29, 33 (1st Cir. 2001). The Court has wide latitude to impose a range of sanctions from moderate (limited exclusion of evidence and attorney's fees) to harsh (total exclusion of testimony and dismissal of the case). Fed. R. Civ. P. 37(c); Fed. R. Civ. P. 37(b)(2). Indeed, the barring of testimony as a sanction for failure to comply with discovery rules has caused cases to be dismissed under either summary judgment or for failure to state a claim upon which relief can be granted. *Ortiz-Lopez*, 248 F.3d at 34, 36 (expert witness barred from testifying due to party's deficient disclosures and egregious disregard of discovery rules and thus opposing party's motion to dismiss was granted); *Musser v. Gentiva Health Servs.*, 365 F.3d 751 (7th Cir. 2004) (expert opinion testimony precluded because witnesses were not disclosed as experts and thus case

was dismissed under summary judgment). Fact witnesses intended to give expert opinions also must be disclosed as experts, although they need not submit an expert report. *Musser*, 365 F.3d at 756-57, 757-58. The purpose of this formal designation is to allow the opposing party to prepare for trial by preparing countermeasures unique to expert testimony, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report. *Id.* at 757-58.

Defendant did not designate David Campbell or James Moore as expert witnesses. At the oral argument, it became clear that James Moore would not be called to provide any expert testimony. However, the harsh penalty of precluding potential expert testimony by Defendant is not necessary in order to prevent undue prejudice and surprise to Plaintiff. Instead, this Court seeks to have the case decided on its merits. *See Musser*, 365 F.3d at 759. Since the trial date is not until June, time remains for Defendant to supplement its responses to interrogatories to include David Campbell as an expert. *See Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (reversing the exclusion of medical testimony because a trial date had not yet been set, it "appeared a long way off," and there was thus "no harm" or "unfair surprise" in allowing the testimony). The Court is not ruling at this time as to whether the anticipated testimony is indeed expert opinion testimony. Rather the Court is attempting to achieve a trial on the merits and to avoid prejudice to Plaintiff by giving Defendant the

opportunity to disclose potential expert testimony as such and by allowing Plaintiff to prepare its case. Since Mr. Moore is a former employee, he is not required to submit an expert report; however, Defendant must disclose the areas in which it expects him to testify in order to allow Plaintiff to properly prepare its case. Moreover, since David Campbell has not yet been deposed, Defendant must make him available to be deposed by Plaintiff.

Plaintiff's motion *in limine* to bar expert testimony is denied subject to Defendant's disclosure of David Campbell as an expert, including an identification of the areas in which he intends to testify, and making him available for a deposition by Plaintiff.

### 3. Third party's failure to pay premium for bond

Plaintiff seeks to bar Defendant from presenting evidence that United Homes, the principal under the Bond, failed to pay Defendant the premium for the Bond's issuance. Plaintiff maintains that such evidence should be barred under Federal Rule of Evidence 402 as irrelevant. Alternatively, Plaintiff argues that such evidence should be barred under Federal Rule of Evidence 403 because it could confuse and mislead the jury regarding Defendant's alleged obligation to Plaintiff. The basis for Plaintiff's claim that such evidence is irrelevant is that Defendant has heretofore never argued that it did not receive the premium payment, Defendant has never argued that nonpayment of the premium rendered the bond invalid or unenforceable, and Defendant has never argued that nonpayment of the premium is an affirmative defense to its surety obligation.

Although Defendant did not raise non-payment as a defense in its Answer or in its Response to Plaintiff's Motion for Summary Judgment, Defendant now argues in its Response to Plaintiff's Motions *in Limine* that Plaintiff bears the burden of proving that the Bond is a valid contract, including the burden of proving there was valid consideration for Defendant's surety obligation.

Any argument that Plaintiff failed to give valid consideration for the Bond was not raised by Defendant in its Answer, in its Response to Plaintiff's Motion for Summary Judgment, or as a contested issue of law or fact in the final Pre-Trial Order. During oral argument, Defendant requested leave to amend the Pre-Trial Order. However, Defendant has had several opportunities to raise this defense. It would be unfair to Plaintiff to allow Defendant to raise this issue so late in the game. Thus, Plaintiff's motion *in limine* to bar testimony regarding non-payment for the Bond is granted.

### 4. Defendant's fourth affirmative defense

Plaintiff seeks to bar Defendant from presenting evidence relating to its fourth affirmative defense at trial due to its failure to produce requested discovery on the matter. During oral argument, Defendant indicated that it has waived this defense. Therefore, Plaintiff's motion *in limine* to bar evidence concerning Defendant's fourth affirmative defense is granted. The fourth affirmative defense claimed that Plaintiff's claims are barred because Plaintiff failed to perform its material obligations under the underlying agreement.

B. **DEFENDANT'S MOTION *IN LIMINE***

Defendant seeks to bar for use at trial as a calculation of damages any testimony, reference, or argument to amounts of money unpaid to Plaintiff under the 1997 United Round Lake Loan. Defendant argues that such testimony or argument is irrelevant and prejudicial. Defendant maintains that the bonded agreement between the parties to this lawsuit is the 1999 Lot Purchase Agreement between United Homes and United Round Lake, not the 1997 United Round Lake Loan between United Round Lake and Plaintiff. Defendant does not object to references to the loan, or the fact that United Round Lake defaulted, for purposes of laying foundation or as history of the transactions that are the subject of this lawsuit. However, Defendant maintains that the 1997 United Round Lake Loan is irrelevant to the calculation of damages. The Court agrees.

Therefore, Plaintiff is permitted to present evidence showing that it was foreseeable that a default under the United Round Lake loan would be a consequence of a breach under the Bond. However, Plaintiff may only offer evidence that damages flow from a breach under the restructured loan to United Round Lake in 1999, and not under the original United Round Lake loan made in 1997. For the foregoing reasons, Defendant's motion *in limine* is denied.

## IV. CONCLUSION

This Memorandum Opinion explains in greater detail the rulings entered following oral argument on April 12, 2004.

**SO ORDERED THIS 21st DAY OF APRIL, 2004.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Howard L. Teplinsky
Seidler & McErlean
One North Wacker Drive, Suite 4125
Chicago, IL 60606

Counsel for Plaintiff

Cornelius F. Riordan
Michael Palermo, Jr.
Riordan, Dashiell & Donnelly, Ltd.
10 N. Dearborn Street, Fourth Floor
Chicago, Illinois 60602

Counsel for Defendant